**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VERNON MEISTER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-00617-JAR |
| | ) | |
| NANCY A. BERRYHILL<br>Deputy Commissioner of Operations,<br>Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Vernon Meister Jr.'s application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385.

## I. Background

On March 10, 2014, Meister protectively filed an application for disability insurance benefits under Title II of the Social Security Act, based on an operative disability onset date of November 10, 2102.[1] (Tr. 17.) On June 3, 2014, he filed an application for supplemental security income under Title XVI, with the same onset date.[2] (*Id*.) Meister's applications were initially denied on October 17, 2014, and, following his written request, a hearing was held

[1] Meister previously filed applications in January 2011 for disability insurance benefits and supplemental security income, using an onset date of January 1, 2008. (Tr. 91.) Those applications were denied by the ALJ on November 9, 2012. (Tr. 91-102.) Thus, while Meister's application alleges an onset date of May 29, 2008, the period of disability relevant to this matter begins November 10, 2012.

[2] *See*, n.1, *supra*.

before an ALJ on November 2, 2016. (*Id.*) Meister and impartial vocational expert Stella Doering testified. (Tr. 19-20.)

The ALJ issued a written decision denying Meister's applications on March 21, 2017. (Tr. 36.) On February 13, 2018, the Appeals Council of the Social Security Administration denied Meister's request for review. (Tr. 1-3.) The decision of the ALJ therefore stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Meister filed this appeal on April 17, 2018. (Doc. 1.) The Commissioner filed an Answer. (Doc. 10.) Thereafter, both parties filed briefing and statements of fact. (Docs. 12, 19, 20.)

## II. Facts

The Court adopts the facts as stated in the certified agency record (*see* Docs. 11-1 to 11-20), as supplemented by the parties. (Docs. 12-1, 19-1, 19-2, 20-1.) The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the

claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. Decision of the ALJ

The ALJ determined that Meister has the following severe impairments: [H]istory of bilateral hip pins; panic disorder; depressive disorder; chronic obstructive pulmonary disease ("COPD"); type 2 diabetes; headaches; obesity; and bilateral knee osteoarthritis. (Tr. 19.) In addition, the ALJ determined that Meister suffered from a number of diagnosed conditions that did not meet the definition of a severe impairment, including irritable bowel syndrome ("IBS"). (Tr. 20.) The ALJ defined Meister's Residual Functional Capacity ("RFC") as follows:

> [Can] perform sedentary work . . . [limited to] occasional climbing of ramps and stairs; occasional stooping and couching but never kneeling or crawling; avoid working at unprotected dangerous heights and dangerous machinery; avoiding jobs that expose the claimant to whole body vibration; avoiding jobs requiring ambulating on unimproved terrain; with no concentrated exposure to extreme cold, heat, humidity, noxious fumes, odors, dusts, gases and wetness; and, limited to simple, routine and repetitive tasks with no close interaction with the public.

(Tr. 21.)

In his decision, the ALJ cited the report of State agency consultant Dr. Fredric Simowitz, who reviewed Meister's file and provided an opinion as to Meister's ability to work. (Tr. 32, 120-22.) Dr. Simowitz's opinion listed a number of limitations regarding exertional ability, postural requirements, and environmental conditions that the ALJ incorporated into Meister's RFC. (Tr. 21, 120-22.) However, the ALJ did not incorporate Dr. Simowitz's opinion that

Meister's IBS required "direct and immediate access to [a] restroom in [the] workplace." (Tr. 122.)

Addressing Meister's IBS, the ALJ noted Meister's testimony that he could not keep a job "because his diarrhea caused him to be in the bathroom every two to three hours" and that he used the bathroom "12 to 15 times a day but still experienced leakage," but determined that those statements were inconsistent with other record evidence. (Tr. 22-23.) Specifically, the ALJ noted that Meister received "routine and/or conservative" treatment for IBS and that treatment had been "generally successful." (Tr. 31.) On the other hand, Meister had shown a lack of willingness to adopt doctors' directions regarding his weight, tobacco use, and diet—on numerous occasions he was instructed that a gluten-free diet would reduce the severity of his IBS symptoms—which the ALJ interpreted as indications that Meister's reported symptoms were not as severe as described and that he was "not motivated fully to return to substantial gainful activity." (Tr. 31-32.) Likewise, the record included a number of instances in which Meister either reported no gastrointestinal difficulty or else described intermittent or mild symptoms, further undermining his claims that his IBS was debilitating. (*Id*. (citing Tr. 395-401, 443-516, 650-778, 783-1075).)

Ultimately, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Meister can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2. (Tr. 34-35.) Specifically, the ALJ determined that Meister could perform work as a Document Preparer, Weight Tester, or Addressing Clerk, among others. (Tr. 35.) The ALJ therefore concluded that Meister had not been under a disability from November 10, 2012—the operative onset date—through the date of his decision, March 16, 2017. (*Id*.)

## V. Discussion

Meister argues that the ALJ committed reversible error by discounting the disabling effects of his IBS. (Doc. 12 at 3.) He argues that Dr. Simowitz's opinion of "Meister's physical impairments [was] consistent with the record as a whole" and that the ALJ erred by failing to adequately explain why that opinion was given little weight, especially considering that the ALJ gave significant weight to the remainder of Dr. Simowitz's opinion. (*Id*.) Meister also argues that the ALJ's conclusion "that Meister's gastrointestinal impairments were stable or resolved . . . contradicted the medical record as a whole." (*Id*. at 4.) Finally, Meister argues that the ALJ improperly discounted his own testimony regarding the impact of IBS. (*Id*. at 6.) Together, Meister argues, these errors led to an inaccurate RFC, which led the vocational expert to testify incorrectly that Meister was not disabled. (*Id*. at 11.) He asserts that the vocational expert's opinion would have changed if the ALJ had properly accounted for the debilitating effects of Meister's gastrointestinal issues. (*Id*.)

As noted, Dr. Simowitz provided an expert opinion that Meister had exertional, postural, and environmental limitations, and specifically opined that Meister's poor bowel control required "direct and immediate access to [a] restroom in [the] workplace." (Tr. 120-22.) The ALJ considered Dr. Simowitz's report and gave substantial evidentiary weight to the listed limitations but found that the opined severity of Meister's gastrointestinal distress was not supported by the record and that Meister's IBS should not affect his RFC. (Tr. 32.)

"Administrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists" and those findings should "be given weight only insofar as they are supported by evidence in the case record." SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996). However, because "State agency medical and psychological consultants . . . are experts in the Social Security disability programs," an ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*

The Court finds that the ALJ gave the proper weight to all parts of Dr. Simowitz's opinion. All agree that there was significant additional evidence to support Meister's exertional, postural, and environmental limitations, including a years-long history of medical examinations detailing the debilitating effects of his severe medical conditions. However, there was also significant and consistent evidence that his IBS did not substantially limit his ability to work.

To begin, Dr. Simowitz found Meister only "partially credible" because his "statements about the intensity, persistence, and functionally limited effects of [his] symptoms" were not supported "by the objective medical evidence alone." (Tr. 120.) Moreover, numerous medical examinations over a span of years indicated that Meister's IBS-related symptoms steadily improved through conservative treatment and had largely resolved by the time he filed his application: June 2014—"Diarrhea slowed down," prescribed enzymes and low-fat diet (Tr. 418-22); November 2014—"Incontinence rarely" (Tr. 769); May and June 2015—Irritable bowel syndrome "improving" (Tr. 985, 999); October 2015—"Continue Nexium[, enzymes and lomotil] as helping control symptoms," importance of low fat and gluten free diets reinforced (Tr. 725); February 2016—"Diarrhea intermittent. Diarrhea relates to stress." (Tr. 711); August 2016—"Still some pain, diarrhea, watery. Some days normal. . . . No sig[nificant] change in [bowel movement] number" since February (Tr. 690). The steadily improving examinations and relatively mild symptoms are corroborated by Meister's ongoing refusal to change his diet. (Tr. 32, 697, 725, 749, 773.)

After reviewing the medical record, the Court finds that the ALJ gave weight to Dr. Simowitz's opinion "only insofar as [it is] supported by evidence in the case record," SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996), and that the acceptance of some but not all of the opinion was not in error.

Meister also argues that the ALJ committed reversible error by understating the severity of his gastrointestinal issues and ignoring his testimony. The Court disagrees based on the medical record evidence discussed above, namely that Meister's symptoms improved steadily through conservative treatment and that his assertions regarding their severity are belied by his unwillingness to change diet. The Court finds that the ALJ's decision not to include in Meister's RFC a requirement that he be given free use of a nearby restroom was supported by substantial evidence in the record as a whole. *Pate-Fires*, 564 F.3d at 942. For the same reasons, the Court is not persuaded by Meister's argument that the vocational expert's opinion was based on a flawed RFC.

## VI. Conclusion

The Court concludes that the ALJ's decision not to include a bathroom limitation in Meister's RFC was supported by substantial evidence in the record. As such, the Court concludes that the vocational expert's opinion was not based on a flawed RFC. The Court will therefore affirm the ALJ's determination.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Meister's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 20th day of September, 2019.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE